# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY,<br><br>　　　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>N2G DISTRIBUTING, INC., a California corporation,<br><br>　　　　　　　　　　　　　Defendant. | CASE NO. 08-CV-1613 IEG (POR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Doc. No. 11.)** |

　　　　Presently before the Court is plaintiff Hansen Beverage Company's motion asking the Court to enjoin defendant from making certain claims on its labels. (Doc. No. 11.) For the reasons explained herein, the Court DENIES the motion. The Court also overrules the parties' evidentiary objections.

## **BACKGROUND**

Factual Background

　　　　Plaintiff Hansen Beverage Co. ("Hansen") brings this action for false advertising against defendant N2G Distributing, Inc. ("N2G"). Plaintiff produces the "Monster" energy drink and other energy beverages, including the "Hit Man" "energy shot." Defendant produces the "Nitro2Go INSTANT ENERGY" ("Instant Energy") and "WICKED ENERGY" ("Wicked Energy") 2-ounce energy shots. Plaintiff seeks a preliminary injunction enjoining defendant from making claims on its labels that Instant Energy "Works for 5-7 Hours" and provides "No Crash," and Wicked Energy "Strikes Fast with 6-7 Hours of Endless Energy." (Motion at 4.)

Procedural Background

Plaintiff filed suit on September 3, 2008 (Doc. No. 1,) alleging two causes of action: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (2) false advertising and unfair competition in violation of California Business and Professions Code Sections 17200 and 17500.  On September 23, 2008, plaintiff filed the instant motion for preliminary injunction.  (Doc. No. 11.)  On September 24, 2008, defendant filed an answer to the complaint.  (Doc. No. 13.)  On November 17, 2008, defendant filed an opposition to the motion for preliminary injunction, (Doc. No. 18,) and plaintiff filed a reply on December 8, 2008.[1]  (Doc. No. 26.)  The Court finds the matter fully briefed and appropriate for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1).

**DISCUSSION**

I.   Legal Standard

A preliminary injunction is appropriate if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits of the case and the balance of hardships tips sharply in favor of the moving party.  Stuhlbarg Intern. Sales Co. v. John D. Brush and Co., 240 F.3d 832, 839-840 (9th Cir. 2001).  These are not two separate tests, but rather two points on a sliding scale in which the required showing of harm varies inversely with the required showing of meritoriousness.  Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003).  Courts have also traditionally considered the advancement of the public interest when granting a preliminary injunction.  Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995).   In any situation, the court must find there is some significant  threat of irreparable injury, even if that injury is not of great magnitude.  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 724 (9th

---

[1] Both parties have filed numerous objections to the evidence submitted by the other side in supporting declarations.  It is within the discretion of the district court to accept even inadmissible evidence for purposes of deciding whether to issue a preliminary injunction. Republic of Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988).  See also Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").  The Court therefore overrules the parties' objections, and exercises its discretion to consider the proffered evidence as appropriate.

1  Cir. 1999).

2  The factual determinations the court makes when granting or denying preliminary
3  injunctive relief, and the legal conclusions drawn from them, are not final adjudications on the
4  merits; rather, the court "need only find probabilities that the necessary facts can be proved."
5  Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415, 1423 (9th Cir. 1984).  Finally, pursuant
6  to Rule 65, no preliminary injunction may issue without a security posted by the applicant in an
7  amount determined by the Court as sufficient to protect the interests of the enjoined party.  See
8  Fed. R. Civ. P. 65(c) (2008).

9  II.     Issue Preclusion

10  Defendant argues the Court should deny plaintiff's motion based on the doctrine of issue
11  preclusion.[2]  (Opp. at 15.)   Defendant argues the Court has already considered and rejected
12  Hansen's identical arguments in Hansen Bev. Co. v. Innovation Ventures, LLC, 2008 U.S. Dist.
13  LEXIS 76243 (S.D. Cal. Sept. 29, 2008).  However, the Court finds the issue preclusion doctrine
14  bars only plaintiff's argument that a presumption of irreparable harm may apply in this case (the
15  "presumption argument").  See Section IV(A)  *infra*.  Issue preclusion does not bar the remaining
16  issues raised in plaintiff's Motion.

17  In the Ninth Circuit, issue preclusion bars relitigation of issues adjudicated in an earlier
18  proceeding if three requirements are met: (1) the issue necessarily decided at the previous
19  proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended
20  with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted
21  was a party or in privity with a party at the first proceeding. Frankfort Digital Servs. v. Kistler (In
22  re Reynoso), 477 F.3d 1117, 1122 (9th Cir. 2007).  In this case, the third requirement is satisfied
23  because plaintiff was a party in Innovation Ventures.

24  As to the second requirement, the parties dispute whether a determination made in a
25  preliminary injunction proceeding is a "final judgment on the merits" for purposes of issue
26  preclusion.  Some appeals courts have held that findings made in granting or denying preliminary

27
28  [2] "Rather than using the terms 'res judicata' and 'collateral estoppel,' the Supreme Court has [in recent years generally] used the terms 'claim preclusion' and 'issue preclusion,'" Frank v. United Airlines, Inc., 216 F.3d 845, 850 n.4 (9th Cir. 2000) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984)).

1  injunctions can have preclusive effect.  In Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605
2  F.2d 990, 996 (7th Cir. 1978), the Seventh Circuit held its decision in a preliminary injunction
3  appeal had preclusive effect in a subsequent case between the same plaintiff and another
4  defendant, even though "such a judgment will ordinarily not foreclose subsequent litigation on the
5  merits."[3]

6       The Ninth Circuit has not specifically addressed the preclusive effect of findings made
7  during preliminary injunction proceedings.  However, the Ninth Circuit has relied upon Miller
8  Brewing in concluding that, "to be 'final' for collateral estoppel purposes, a decision need not
9  possess 'finality' in the sense of 28 U.S.C. § 1291.[4]  A 'final judgment' for purposes of collateral
10  estoppel can be any prior adjudication of an issue in another action that is determined to be
11  'sufficiently firm' to be accorded conclusive effect."  Luben Industries, Inc. v. United States, 707
12  F.2d 1037, 1040 (9th Cir. 1983) (citing Miller Brewing, 605 F.2d at 996).  Luben held preclusion
13  should be refused if the prior decision was "avowedly tentative," but preclusion is supported if the
14  parties were fully heard, the Court supported its decision with a reasoned opinion, and the decision
15  was subject to appeal.  Id. (quoting Restatement (Second) of Judgments § 13 (1982)).  The Ninth
16  Circuit has also held the *factual determinations* made by a court when granting or denying
17  preliminary injunctive relief, and the *legal conclusions drawn from those factual determinations*
18  are not final adjudications on the merits.  Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415,
19  1423 (9th Cir. 1984).

20       Accordingly, the factual determinations and associated legal conclusions the Court made in
21  Innovation Ventures do not have preclusive effect in the present case.  This finding extends to
22  plaintiff's showing of likelihood of success on the merits, irreparable harm, and relative hardship.
23  However, the Court's finding regarding the only pure question of law in Innovation Ventures, the
24  presumption argument, was "sufficiently firm" to preclude re-consideration of the issue in the

---

[3] See also Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (holding a court's findings in a preliminary injunction proceeding may have preclusive effect if the circumstances make it likely that the findings are "sufficiently firm" to persuade the court there is no compelling reason for permitting them to be litigated again).

[4] 28 U.S.C. § 1291 provides that the courts of appeals have jurisdiction over "all final decisions of the district courts of the United States."

present case. The presumption argument is precluded because it is a purely legal argument upon which the parties were fully heard and the Court rendered a reasoned opinion. Furthermore, plaintiff's presumption argument in this case is identical to the argument it submitted in <u>Innovation Ventures</u>, satisfying the first requirement for the application of issue preclusion.

III.   Likelihood of Success on the Merits

    A.   Plaintiff's Arguments

Plaintiff argues it is likely to succeed on its claim for false advertising under the Lanham Act. Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiff argues the claims defendant makes on the Instant Energy and Wicked Energy labels are literally false. Plaintiff relies on a declaration by an in-house expert, Dr. Thomas Davis. Dr. Davis declares that "energy" requires the consumption and burning of calories. (Davis Decl. at ¶ 12.) Instant Energy and Wicked Energy, as low-calorie products, therefore "do not, and cannot, produce energy, a defined scientific term, for the period of time that these products claim, in any measurable amount. . . ." (<u>Id.</u> at ¶ 5.) Dr. Davis defines energy as the ability to do work, a scientific meaning, not the "energized feeling" which a user may obtain from substances such as caffeine. (<u>Id.</u> at ¶¶ 7, 16.)[5]

Plaintiff particularly takes issue with the products' claims of providing 5-7 hours of energy, and Instant Energy's claim of "no crash." Plaintiff argues such claims are scientifically

---

[5] Plaintiff supports its argument that "energy" as used on the bottles means physical energy by discussing the pictures on the Instant Energy bottle (a cyclist and a surfer). Plaintiff argues this insinuates the product provides physical energy. (Motion at 9.)

1  impossible. (Motion at 7.)  Plaintiff bases this argument on Dr. Davis' statement that "in his
2  expert opinion" the claims are false based on the drink's ingredients and "generally accepted
3  principles of biochemistry, pharmacology, and physiology." (Davis Decl. at ¶ 15.)  Dr. Davis
4  maintains the products' claims are scientifically impossible regardless of whether the Court
5  construes the definition of "energy" as caloric energy or merely an "energized feeling." (Id. at ¶
6  16.)

7        B.     Defendant's Arguments

8        In response, defendant argues its labels' claims are not "literally false." Defendant submits
9  advertisements of numerous other products on the market, such as plaintiff's own Diet Red Energy
10 product, which are called "energy drinks" despite having little or no sugar.  Defendant also
11 submitted a declaration by Dr. Roger Clemens, who opines that there are definitions of energy
12 different than the narrow calorie-based definition upon which plaintiff's expert relies.  Citing
13 scientific studies and literature, Dr. Clemens declares that the ingredients found in Instant Energy
14 and Wicked Energy, including caffeine, vitamins, and amino acids such as taurine, have been
15 scientifically shown to increase mental and physical energy levels.  The products therefore deliver
16 a perception of "energy" without actually delivering caloric energy to the body.  Pursuant to these
17 reasons, Dr. Clemens opines the statements on the products' labels indicating they provide five to
18 seven hours of energy "are consistent with the cited research and extensive reviews on caffeine
19 metabolism and physical performance." (Clemens Decl. at ¶ 14.)  Dr. Clemens also comments that
20 Dr. Davis' assertion to the contrary "fails to consider the pharmacodynamics of the combination of
21 ingredients found in the Instant Energy and Wicked Energy products, or any synergistic effects of
22 those ingredients." (Id. at ¶ 17.)

23       C.     Analysis

24       The parties' moving papers indicate numerous disputes of fact that preclude the Court from
25 determining the plaintiff is likely to prevail on the merits of a Lanham Act false advertising claim.
26 First, the parties offer expert declarations providing contrary definitions of "energy."  Plaintiff's
27 view is that the word "energy" can only mean caloric energy.  Defendant's view is that "energy"
28 may be understood more broadly, and moreover that caffeine, amino acids, and vitamins can
actually increase physical energy.  Second, the parties' experts dispute whether Instant Energy and

- 6 -       08cv1613

1  Wicked Energy can provide 5-7 hours of energy.[6]  "In deciding a motion for preliminary

2  injunction, the district court is not bound to decide doubtful and difficult questions of law or

3  disputed questions of fact."  Int'l <u>Molders' and Allied Workers' Local Union No. 164 v. Nelson</u>,

4  799 F.2d 547, 551 (9th Cir. 1986) (internal citations omitted).  Accordingly, the Court declines to

5  resolve these factual disputes on such a limited record, and finds plaintiff has not demonstrated a

6  likelihood of success on the merits.

7  <u>IV.</u>     <u>Irreparable Harm</u>

8          <u>A.</u>     <u>Presumption of Irreparable Harm</u>

9          Plaintiff offers scant evidence it will suffer irreparable harm absent injunctive relief.

10 Plaintiff submits the Declaration of Hansen's Chief Executive Officer, Rodney Sacks.  Sacks

11 cursorily states defendant's labels have influenced and will continue to influence "substantial

12 numbers" of consumers' purchasing decisions.  (Sacks Decl. at ¶ 14.)  Sacks further states, "I

13 believe Vital Pharmaceutical's ads have adversely affected Hansen's sales, even though I cannot

14 quantify precisely by how much."  (<u>Id.</u> at ¶ 19.)

15         Plaintiff argues that the Court should *presume* irreparable harm because plaintiff has shown

16 defendant's advertising claims are literally false.  First, the Court declines to apply such a

17 presumption because plaintiff has not shown literal falsity.  Second, the Court has already rejected

18 this argument in <u>Innovation Ventures</u> and has decided the doctrine of issue preclusion bars

19 plaintiff from re-asserting it here.  See Section II *supra*.  Third, even if issue preclusion did not bar

20 plaintiff's argument, the Court still declines to deviate from traditional principles of equity without

21 binding, in-Circuit authority in light of <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006)

22 (holding courts should not apply blanket presumptions when evaluating the propriety of equitable

23 relief) and  <u>Reno Air Racing Assoc., Inc. v. McCord</u>,452 F.3d 1126, 1137-38 (9th Cir. 2006)

---

[6] Plaintiff correctly points out that defendant presents no argument or evidence to rebut plaintiff's assertion that the "no crash" claim on Instant Energy's label is false. However, neither plaintiff nor its expert Dr. Davis define "crash" or explain with any detail why the claim of "no crash" is false. Dr. Davis merely offers a conclusory opinion that "Instant Energy's claims [of]. . . "no crash" are false based on the ingredients of [the]drink, the concentration of those ingredients, and generally accepted principles of biochemistry, pharmacology, and physiology." (Davis Decl. at ¶ 14). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original). Plaintiff does not make the required clear showing of probable success on the merits through Dr. Davis's bald assertion regarding Instant Energy's "no crash" claim.

1 (explaining "[t]he Supreme Court recently reiterated that district courts should apply 'traditional
2 equitable principles' in deciding whether to grant permanent injunctive relief and the decision is
3 'an act of equitable discretion by the district court. . . .'") (citing eBay, 126 S. Ct. at 1839).

### B. Traditional Principles of Equity

Traditional equitable principles disfavor an injunction in the circumstances of this case. First, courts are especially hesitant to alter the status quo before a full trial on the merits. As the Ninth Circuit explained in Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804 (9th Cir. 1963):

> It is so well settled as to not require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it.

Id. at 808-09; see also LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) ("[The requested relief] will not further the purpose of a preliminary injunction, which is merely to preserve the relative positions of the parties until a trial on the merits can be held.")  Defendant argues the balance of hardships tips in its favor because as a much smaller business than Hansen, relabeling of its products "in these difficult economic times . . . could be devastating to N2G."  (Opp. at 15.)  Defendant argues that complying with the injunction, at minimum, would damage its goodwill with customers because, such an action would effectively tell consumers the products "never did or no longer do what N2G claims." (Id.)  Defendant also argues this decrease in goodwill could carry over to N2G's other products.  The balance of equities disfavors the injunction without further factual development.

Second, plaintiff's delay in bringing suit and moving for the instant preliminary injunction weighs against granting injunctive relief. N2G's President Jeffrey Diehl declares N2G has sold Instant Energy since August 2007 and Wicked Energy since April 2008. (Diehl Decl. at ¶¶ 2-3.) Plaintiff brought suit on September 3, 2008 and did not move for a preliminary injunction until almost three weeks later, on September 23, 2008. Plaintiff argues it only saw reason to bring suit after discovering defendant's claims were false, upon "investigat[ing] the energy shot market" in July and August 2008 and "start[ing] to look more closely at [defendant's] specific advertising claims." (Reply at 4.) This assertion indicates plaintiff knew about N2G's products for at least

- 8 -                                                                                                   08cv1613

1 two months before taking legal action, regardless of its reasons for delay.  This claim also supports
2 a finding of no irreparable harm because it shows plaintiff did not believe Instant Energy and
3 Wicked Energy had a serious impact on Hansen's business for up to a year after defendant
4 introduced the products.  Delays in requesting an injunction, whether for months or years, tend to
5 negate a claim of irreparable harm.  See <u>Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.</u>, 762
6 F.2d 1374 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a
7 lack of urgency and irreparable harm."); <u>Givemepower Corp. v. Pace Compumetrics, Inc.</u>, No.
8 07cv157 WQH, 2007 WL 951350 (S.D. Cal. Mar. 23, 2007) (holding delay of two months, in
9 circumstances of case, negated showing of irreparable harm).

10       The Court therefore finds the balance of equities disfavors a change in the status quo
11 before a full trial on the merits.

## CONCLUSION

13       For the foregoing reasons, the Court DENIES plaintiff's motion for a preliminary
14 injunction.

16 **IT IS SO ORDERED.**

18 **DATED:  December 30, 2008**

19 _____
    **IRMA E. GONZALEZ, Chief Judge**
20     **United States District Court**